We'll next hear argument in case 23-16147, Anthony DeFrancesco v. the Arizona Board of  Good morning. Good morning. May it please the Court, my name is Lauren Brody, and I'm here on behalf of Appellant Anthony DeFrancesco to ask the Court to reverse the Rule 12b6 dismissal of his First Amendment claim on qualified immunity grounds. I'd like to reserve three minutes for rebuttal. When Appellee Michael Dake fired DeFrancesco from his job at the University of Arizona in 2019, it was clearly established that it would violate the First Amendment if Dake did so to retaliate for speech and for speech. Slow down a little bit for me, if you don't mind. Thank you. Of course. When Appellee Michael Dake fired DeFrancesco from the University of Arizona in 2019, it was clearly established that it would violate the First Amendment for Dake to do so to retaliate for speech and for President Robert Robbins to sit idly by. But obviously, your problem here is that it wasn't his speech, so, right? So that's what you have to deal with. It doesn't help to simplify the problem. It's a very hard and interesting problem, but it doesn't help to simplify it. So we are here because Appellee succeeded in convincing the district court that the clear line drawn by the First Amendment against retaliation for speech doesn't apply where the victim of the retaliation here, a spouse, is not the person who actually engaged in the protected activity, speech. Appellee's told this Court that that doesn't implicate the First Amendment or the Constitution at all. You know, I can't lie that I do not have a Supreme Court or a Ninth Circuit case that says it violates the First Amendment for a government to fire the spouse of an employee who engages in protected speech. But you have two pretty close-in Supreme Court cases, which is the Title VII case, although it's a Title VII case, the reasoning is fairly directly applicable. Correct. And the Heffernan case, which for some reason is not discussed in the briefs, it seems to me to refute the cases from this Court and elsewhere, like Wasson would say that it has to be the individual's speech, First Amendment, his own speech, that in order to have a First Amendment claim, because Heffernan clearly says that isn't true. So you have to put those two together, you're kind of almost there. I mean, we agree, and I think that it's telling that the Sixth Circuit has addressed cases in which the victim of the retaliation were — was not the speaker without even mentioning this as a potential issue, which is why there's a very long line of Sixth Circuit cases ending in multiple cases just declaring this is clearly established. And you know, by now, it's not just the Supreme Court cases. There are also a number of Supreme Court cases in the public employment context generally. There are a number of Supreme Court cases about how marital relationships in particular experience a significant amount of constitutional protection from undue government interaction. And the cases that have decided this exact issue, including the district court like Lewis and the district court cases in California, have all said, look, this has to be obvious. It would be a huge gaping hole in the First Amendment.  Is there any case anywhere that's actually to the contrary? There are some that say it's not clearly established. There are some, there's at least one, I think, Seventh Circuit opinion that says it's an open question. But is there any case that says no? No. I believe they have not identified a direct circuit split, either the district court or the circuit level at all. The closed — — they fired for the speech of another person where that second person was a public employee. Here, they're both public employees, but the speaker was a public employee. So, there are a number of cases that do this. The Second Circuit case was one employee was fired for an alleged lawsuit — well, for a lawsuit that was filed that wasn't alleged — by another government employee against their mutual employer. I think that's the Adler case. Adler and Adkins always get confused in my head. And there are, you know, the reality is that these are — the nature of mutual public employment isn't that rare. And we also have other situations where it's not employment, but we have close family relationships where the government is nevertheless able to do — You're starting with the clearly established issue, and that's what the district court started with. But wouldn't it be more helpful to actually start with the question of whether this — we don't have a Ninth Circuit case as to whether this actually does violate the First Amendment on the merits. And to me, it's just really hard to think about the clearly established issue until you know that this does violate the First Amendment and why. I mean, I think the issue raised by Your Honor is why these cases are not meant to be decided on a motion to dismiss. I'm sorry, I'm not hearing you. I think the issue raised by Your Honor is why these types of cases are poorly decided on a motion to dismiss, because we don't have a record about — No, it's not why it was decided on a motion to dismiss. It's why it was decided without getting to the merits. Now, I understand that under Pearson that's permissible, but in a case like this, which is a totally, at least for the Ninth Circuit, novel issue, but not elsewhere, I find it hard to think about without first addressing the merits issue. So the merits issue being whether or not the speech involved is constitutionally protected. And the reason why a motion to dismiss is a poor vehicle is because we're sitting here having to accept the allegations of the complaint as true. And the allegations of the complaint are inherently one-sided because we don't have the benefit of discovery. So we don't have any evidence at all about what the real intent here is. We don't have a robust record about the scope of employment responsibilities, which is a disputed question of fact. We don't have a lot of — there's no evidence about, you know, the nature of all of the circumstances in which the husband, Goldman, discussed with Robbins and others at the time about the recruitment process. What plausible — I mean, this is outside the briefing, but I know it was raised below. What plausible allegation is there that this was Goldman speaking as a private citizen as opposed to just within his role in the search committee? So he — we don't look about his role in the search committee. It's, you know, his — I may be having trouble hearing you, and I think it's because maybe you're too close to the mic. Yeah. Is this better? Just try again. Go ahead. We look at the two factors, the two main factors, at least for purposes of determining whether the speech is protected, and it's whether it was a public concern and whether the government employee was speaking as a public — a public citizen or — sorry, a private citizen or a public employee when he engaged in the speech in question. The issue of whether he was a public — whether he was speaking within the scope of his job duties, he wasn't. He was the CFO of the University of Arizona. But it doesn't matter, right? Because at this point, no one is challenging that holding. I mean, it's concerning because I find it a very difficult question, but it's not before us at this point. Well, it's — That issue is not before us as to whether Goldman's speech was itself protected. Well, to answer Your Honor's question about whether or not the merits issue is resolved, whether or not the speech is protected, you — both of those are an issue. I'm not talking about whether Goldman's speech is protected. I'm talking about whether — without — whether DeFrancesco has a retaliation cause of action under the First Amendment. One of the reasons that it seems difficult here is because you had a First Amendment Intimate Association claim originally, and it's dropped out. And the case law seems to be some amalgam of a First Amendment Protect — Intimate Association and a First Amendment speech claim. Your opponents contend that the whole First Amendment Intimate Association piece is out of the case because you dropped it out of the complaint. And if that were true, we'd go home and we wouldn't worry about the other. So a response to that would be helpful.  There — nothing has been dropped from the complaint. The cause of action that is at issue here has been the same cause of action that has always been there, and it is under the First Amendment. It was titled in the original complaint, the First Amendment complaint that's not before the Court, and the Second Amendment complaint, like, First Amendment retaliation. That's it. So whether or not that retaliation claim only implicates free speech or the right of Intimate Association has not — Or a combination. Or a combination of both. But the person — I mean, I gather it matters to your — to your First Amendment claim that these two people had a First Amendment Protected Right of Intimate Association and that there was retaliation based on the speech of one of them. That's correct. The — the linkage here is that the retaliation only occurred because of the close personal relationship. It wasn't against a random third party. But what is the — what is the First Amendment valence to that? It doesn't seem that they're spouses because of a — of a free speech reason, or they're spouses because of an intimate association. So it would seem that the more plausible right here would be some type of substantive due process right to association, not any sort of free speech right when your client wasn't actually the speaker. So the cases like Lewis, for example, have addressed this under both the First Amendment free speech, as well as the intimate association, and found that both are a plausible basis to move forward. The Supreme Court law is clear that there is a First Amendment-grounded right of intimate association. As well as the Fourteenth Amendment. I mean, it's been said to be confused, but in fact, Duarte is flat out says that. Correct. Can I — so I think Judge Bresch just asked, how do you ground this in the First Amendment? And I'm struggling with that because, you know, there is two different types of association. First Amendment association, as I've always understood it is, we have to hang out together in order to be an incubator, in order to make our points, and if you break up the association, if you say you can't have a certain club or a group, then they won't — you won't be able to have the incubator of ideas so that we'll speak. Okay? So that's association in order to express. Expressive association. Obviously, intimate association is marriage, relationships, et cetera. And this seems to be — I think your answer to Judge Bresch is, well, courts have included it in both, but what is the — I have a follow-up question, because I think you're right. Courts have done so, but it's not clear to me at all. In fact, it's less than clear. I do not — I'm having trouble seeing how there's a First Amendment right — there is a First Amendment right of association, but how that is implicated in a case like this. So courts have discussed intimate association under the First Amendment in addition to expressive association. But they also — so I guess maybe I should just follow up with my second question, then, which is, if you look at the Second Amendment and the Sixth Amendment cases, it seems pretty clear that they are coming at this from a different angle, and even within the Sixth Amendment line of cases, the judges have said, well — In the Sixth Circuit? Yeah. I'm sorry. The Sixth Circuit. In the Sixth Circuit cases, judges have sort of — we're not really sure where this comes from. And how — and they've said, well, I think they started in the First Amendment, and then they maybe ended up in the Fourteenth. There's been some discussion, at least recently, about maybe this belongs to the Fourteenth Amendment. But the question I have for you is, A, do you think that's true, that there's sort of a mix of where — it's like — let me see if you agree with this. It's like there is a lot of support for the fact that this right must exist, but it's — judges are having trouble, courts are having trouble being — figuring out exactly how it works. And where it comes from. And if that's the case, then the ultimate question I want to ask is, how does that feed into the qualified immunity analysis? Because if you have sort of a fairly broad consensus that some right exists, but that right — but we don't know how it comes about, it's hard to say it's clearly established, it feels like. Although, I suppose you could say it's clearly established, but we don't know where it comes from. But that — you see where I'm coming from. It feels a little weird to say, there's this clearly established right, it's clear — there's a robust consensus. We don't have any consensus about where it comes from, but it's robust enough that it must exist. That feels funny to me. So all of the cases that we've been talking about only address this right as arising under the First Amendment, not the Fourteenth Amendment. The cases that this Court has decided under the Fourteenth Amendment tend to be whether particular sort of less close-than-marriage relationships enjoy some level of constitutional respect from government intrusion. And so those are the cases cited in the opposition brief about, you know, whether a relationship with a sex worker, a relationship between a therapist and its patient enjoys a modicum of privacy from state intrusion. So that's sort of a different body of law than what we're talking about here. The cases that have — I will agree with Your Honor that the cases have identified some confusion over the — whether it is just a pure free speech clause of the First Amendment right, whether it is the associational right arising under the First Amendment, or whether it's some combination of the two of those things. For purposes of it being clearly established, there are a lot of constitutional, like, theories and tests that we do not require government officials to know and be able to articulate with precision before the right is clearly established. Essentially, what you're saying is they have to know that they can't do it. Correct. That is the standard. Why — whether they can't do it because it's the — this part of the First Amendment or that part of the First Amendment doesn't affect the fact that they can't do it. Because they should know they can't do it.  So, you know, I suppose that can be true. It just feels kind of — you know, let's say there were three different circuits, and the one circuit said, you have a right to do this, and it's because of the First Amendment. And you have a second circuit that says, you have a right to do this, and it's because of the Second Amendment. And you have a — we'll skip over the third. You have a right to do this because of the Fourth Amendment. And I guess you could — you could just add it all together and say there's a robust consensus, even though there's not a robust — I mean, I think you have to say there's not a robust consensus in my somewhat crazy hypothetical that there's a — the reason why. And so it just feels kind of funny to say it's clearly established when — if they're — if they're not really sure — if it's not clearly established at all where the right is actually coming from. So the — the source of the right emanates from the constitutionally protected activity, which is why we have this line of cases like this one, where it is not just the fact that they're married. We're not just talking about a case in which the only reason the retaliation occurred was due to some desire to interfere with the party's marital relationship. That might be a better intimate association claim. Here, the start of the analysis is that the husband, Goldman, engaged in protected speech. And because Goldman left, and because of the shade of a man at the university —  That's why — that's why I think it's always a First Amendment retaliation, because you are firing somebody because of somebody's speech. Correct. It makes sense that it has to have some tie to the First Amendment, because, you know, you're firing — but it also seems to me like it has to have some fairly strong tie to the 14th Amendment, to due process, to intimate association. Because at the end of the day, if you say, I'm firing you because I woke up this morning and some politician that has no relationship to you just made me mad, and so I'm just going to fire somebody in my chambers, one of my clerks, right, because I'm just mad at some politician or something. There's no intimate association between my clerk and that. And so the only — the theory seems, to me at least, that it has to be both. Like, it's a hybrid type thing. But the courts haven't really made that clear, so I'm just struggling with why that's clear at all. And that's my biggest problem I have with it. Because the courts that have analyzed this have analyzed the same questions we're dealing with here. Is the speech involved protected? Is the activity involved, such as filing a lawsuit, is that protected under the Constitution? Those — that's the analysis and why — you know, we could stand up — we could argue, you know, this is the — it's an alternative interpretation, is whether it's under the association and whether he can show as a matter of law that his relationship was damaged because of the — because of the interference that occurred, which is the sort of type of legal analysis that applies to an intimate association claim, opposed to the First Amendment, which is subject to this arguably more burdensome test of is the speech protected? Was it the substantial factor or motivating cause? Was he speaking as a private citizen or a public employee when he gave the speech? Those are all factors that we've addressed because we think the correct analysis, in light of the case law that does exist, has to find that the speech is part of the equation because it's the motivation for that. And if we're wrong after discovery, then sure, they can remove for summary judgment, including on qualified immunity grounds, and we lose. But sitting here today, it — there isn't a case on the other side. And we just have these cases saying, this has to be protected, this is protected, it's clearly established that this is protected. And those cases that have done this have analyzed it in light of speech. But which is essentially what the Supreme Court Title VII case said. It said, well, obviously, this is protected. The only hard question is who could bring the lawsuit, and they said, well, yes, the second employee, the one who wasn't speaking, can bring the lawsuit because he, in the employment context, has — essentially is the one who suffered the injury. And in that instance, they — Judge Scalia's — Justice Scalia's opinion emphasized the fact that they were both employees and that that mattered. So I'm not clear why it shouldn't matter here as well. So I think that case is closer in than it appears, maybe. I mean, we agree. And when you look at the qualified immunity analysis, what would the Supreme Court of the Ninth Circuit decide if it had been presented with this case? We have the Biggs case, which the holding isn't really opposite because it deals with another exception. And we have the Supreme Court case. The analysis of those has not said, oh, the spouse of a person engaged in protected activity has absolutely no rights. In doing the qualified immunity analysis, are we required to assume that the underlying speech here was protected? Because I do have questions as to whether that's been properly alleged. You don't have to assume that. You do have to read the allegations in the light most favorable. And we think that those allegations — Well, I thought we do have to assume it because the defendants have specifically and expressly abjured any challenge to it. The district court said so, and they said — and the defendants said we're not challenging that. So it seems to me we have to assume it for now. I find it troublesome. I'm not at all sure it's — that it's protected. But for present purposes, it appears we do have to assume it. I mean, in full disclosure, you know, it's a — I think on a motion to dismiss, I think whether or not it — we've stated a claim as a question of law that is an independent ground that the court can reach on its own, which is why we did address it in our opening brief. But — and I do think that defendants did challenge it in their opposition. They've taken — But what they didn't challenge is whether Goldman's speech was — Correct. That's — that's what — I think that's what Judge — Judge Bress meant. That is what I'm getting at. And I just don't see how — I'm having real trouble looking at the complaint and seeing how that — that wasn't the basis for the district court's decision. I recognize that. But I'm asking myself, where is this case going from here? And I really have a hard time seeing how Goldman was speaking as anything other than a person who was involved in the search committee, as opposed — I mean, a private — he's not really acting in a private citizen in any meaningful way. To say that — the fact that he learned about something in his capacity as a public employee means that it's — he's necessarily speaking as a public employee, not a private citizen, is just — It's not — it's not because he — I mean, I don't think we should be getting into this. But it's not because he — he was — learned about it as a public employee. It's because he was both on the committee and at the meeting in which this was discussed because of — in the role of his — his employment. And you can say, well, he was a volunteer, but he wasn't a — he was getting — I'm sure he was getting paid that day for being at that meeting because he had a high position in the — in the university, and the people with high positions in the university were having a meeting to discuss this employment — this employment decision, and that's why he was there. But it's not before us. So to answer Judge Bresch's question, I mean, it is — it would be equally true of the plaintiffs in Kosoltservi, the city of Salem, Oregon, that they experienced the safety violations while they were on the job, where they were paid to be there. Well, that all could be true. If he had gone — if he had gone after the meeting to, say, you know, some officer of the university and said, you know, I have a problem I want to tell you about that I happen to know about, which I found out about because I was in committee, but I really have a problem and I want to talk to you about it. But that's not what happened. He was in a meeting which was discussing this problem, this question, and he was in that meeting because of his position. So — and they were going around the room and discussing it, as I understand it, and this is what he said, and other people said other things. So it's — but it's not before us. We can — we can agree it's not before you, but to just get back to the question, he was in this meeting — we're talking about the university president. There are a few other people at the university that he could report this to. I mean, that's — it's the highest-most position in the university. He was in a room with everybody else at the university with any power, the general counsel of the university, the chief of staff to the university president, the provost. This is where Goldman raised his concerns, and he wasn't on the — he's not responsible for ferreting out ethical violations at the University of Arizona as CFO or on the search committee, and the Ninth Circuit has held that — Well, I'm sure you will argue all this out later on in this case if the case continues. Correct. Well, we've kept you going here. Why don't we put three minutes on the clock for rebuttal, and we'll see you in a few minutes. Thank you. Good morning, Your Honors, and may it please the Court, Dan Dowd on behalf of the Appelese University of Arizona President Robert Robbins and Executive Vice President Michael Dake. Your Honor, this appeal fails on application of prong two of the Qualified Immunity Analysis. The appellant hasn't been able to show that a constitutional right that he held, which has been a moving target, was clearly established in 2019 when Dr. Dake — There are a lot of cases holding under similar circumstances, that the — an individual who is — suffers adverse consequences because of the speech of somebody whom — in whom they are engaged with an intimate relationship has a First Amendment cause of action. The exact grounds may differ, but if you were an officer of a university and wanted to know could you do this, every case you find would say no. Is that right? Or maybe would say we don't know, or maybe would say it's not clearly established, but no case would say yes. I'm not aware of a case that says yes, you can do this, and that's not the standard for whether qualified immunity applies. But in 2019 — The bottom line of whether you can do this, leave aside differences about why. There are a lot of cases that say no, and none that say yes. Is that right? I'm not — I have two Supreme Court cases that come pretty close to saying no. Well, and pretty close is the reason why qualified immunity applies. I mean, watching the consternation of this panel, it's the same consternation we've had in going through three different complaints. No, there isn't a lot of — there's no consternation, really, as to the outcome, which is that — that any reasonable person would say, well, I mean, it seems to me, you know, maybe it wasn't wise to do this in a motion to dismiss. I assume your ultimate defense is that's not what happened here. And if we knew what happened here, we might have a very different view of the situation. But if this were what happened here, if somebody said — if what had happened here is they had gone up to Mr. DeFrancesco and said, you know, because your husband, Mr. Goldman, said this, we don't want you around here anymore, and we're firing you, let's assume those were the facts. The notion that any reasonable university official would think that was okay seems fairly far-fetched. Well, Your Honor, respectfully — We know you can't do it under Title VII. We know that it doesn't matter whether it was under Heffernan, whether it was his speech or someone else's speech. And we know that there are cases in the Sixth Circuit and the Seventh Circuit and actually in the Eleventh Circuit, and a good number of district court cases that say you can't do it. They may differ about why, but they say you can't do it. I don't think that's quite right, Your Honor. In the Eleventh Circuit, we have the Gaines case, which is — Yes, and the Gaines case says you can't do it, except it's not clearly established. Well, the Gaines case involved an allegation of a direct intrusion on the intimate relationship between husband and husband. There's no allegation here that there's been any invasion of the intimate association itself. It said, I was punished because of the conduct of my husband. So we're not aware of any Ninth Circuit case that has defined the contours of an intimate association right, the scope, the contours, or how it's violated, to include the fact situation here. Those cases — What cases exist where there's retaliation against one public employee for the speech of another public employee? What are the cases that you're aware of that involve that situation, which is what we have here? Sure. So, what we think is the leading case is Gaines out of the Eleventh Circuit 2017 case evaluating 2013 conduct, where the plaintiff was the daughter of the father who was a member of the Board of Supervisors. The plaintiff was a schoolteacher in the same county. In that case, the court applied qualified immunity and said, under a First Amendment right of free speech held by the nonspeaking daughter, that's not clearly established. We're not even sure if that exists, because the only law we're aware of talking about it is the Title VII case, the Thompson case, which has an express provision prohibiting the retaliation at issue. It also evaluated the right of intimate association in that case, which was alleged, and the court said that it has not been clearly established that the type of conduct here violates the intimate association between close family members. So that's a case that we would promote to you. There is a patchwork quilt of cases that have been provided to you by our opponent, unpublished cases, Sixth Circuit cases that have not been followed outside the Sixth Circuit, and the case that they rely most heavily on is from the Middle District of Alabama that the Gaines case expressly chose not to follow in deciding whether there was a clearly established right or not. So there are cases, typically under a right of intimate association, that have found that the cause of action by the nonspeaking family member exists. They have not been followed in this circuit, and they haven't been embraced by the United States Supreme Court at this point. So this right, it may exist. It's hard to tell. We don't know what the right is. But for example, you rely in your brief a lot on the West, on WASSON, which seems to me to have been clearly overruled by Heffernan. It's no longer good law. Do you disagree with that? I don't know, because when you mentioned Heffernan, I had that litigant's freeze of what is Heffernan, and we checked, and neither side has cited it. I'm not sure what it says. This case is indicted by WASSON. Well, Heffernan says in no uncertain terms that what Heffernan was was a public employee who was a police officer who was putting campaign signs around, and he was demoted for doing that. And he says, well, they weren't my campaign signs. They were my mother's. And the Court of Appeals said, well, you weren't speaking, so you don't have a First Amendment claim. And the Supreme Court said resoundingly, no, you do, because the First Amendment protects against chills, against, it's based on what the motive of the employer is and not who the speaker is, because we're trying to protect chilling of speech more generally. And that's true of First Amendment overbreath, and it's true of First Amendment facial challenges as well. Well, the First Amendment is broader as to who can be protected than other constitutional and statutory claims. So WASSON, which was sitting on a different basis, I don't see how it survives. How does it survive? Well, and again, our case doesn't rise or fall on WASSON. We cited, I think, three or four other problems. Well, except you do make, you do spend a lot of time on the fact that it wasn't his speech Therefore, he has, he's defending the First Amendment rights of others, not himself. Not quite, Your Honor. Respectfully, what we've said, our consternation this entire case has been what right is being alleged to have been violated? And the answer that we've received in every brief and every oral argument is it's First Amendment retaliation. There's no general prohibition on retaliation that hovers over the First Amendment. It has to be linked to some right that's actually protected by the First Amendment. Speech, association, petitioning the court, religion, something. You can't just say First Amendment retaliation, but we're not going to tell you what actual First Amendment right was infringed upon. And what we know isn't at issue here is a right of intimate association. This isn't where we're arguing waiver because they forgot to argue it. This is a case where at the very first oral argument, our opponent said, this is a free speech retaliation case. This is not an intimate association case. Is not. But clearly, I understand what they're saying is that we don't have to prove that the association at the First Amendment association was itself harmed, but it is integral to why they're saying that there is, there has to be a connection to that person. Of course. We've always said, Your Honor, this is trying to graft two rights together. That's correct. Correct. And what's wrong with that? It's never been briefed or argued. And in fact, when questioned about it, they said, no, this is not an intimate association case. Is that what they said? Or did they, I mean, there's two types of 14th Amendment intimate association claims. One would be like a standalone one, right? Which.  And I think it's probably clear they've disclaimed that. But as I understood her this morning, they haven't disclaimed, they haven't necessarily disclaimed more of a hybrid approach, which is where it's a First Amendment because you are talking about the allegations that you got fired because of speech, not yours, but somebody else's, but that it has to travel through an intimate association. And so it would be, it would be both, mushed together and have they, I'm just, have they disclaimed that? I believe so. That's why this is so confounding. In paragraph 65 of the original complaint, they said that DeFrancesco had a right of intimate association with his husband, Goldman. When the second amended complaint got filed, after the oral argument where the avowal by counsel was this is a free speech case, this is not an intimate association case, the Court of Appeals sent it back so that they could amend to address whether or not it was protected speech. When they amended, they removed paragraph 65. And the district court, as you'll note from her order, said this is not a case about the right of association, and so I'm not going to revisit my prior holding that that right is not clearly established in this circuit, in this context. And it was gone. And then we got the appellate briefs where they still don't, they still don't argue that this is sewing together an intimate association with a free speech right and we're under the First Amendment and it's established. Instead we get all of these cases that are based upon the right of intimate association, but never an argument that that's what's been violated here, never an allegation. And if, so that kind of goes to my earlier question, if you're wrong about this, and I'm not sure whether you are or not, but I'm curious to hear counsel and our side's response to that, but if you're wrong and they have applied enough that, yeah, we're not doing a standalone intimate association, but we're doing a hybrid where it goes, where it goes through both, then what does it take for something like that to be clearly established? Can you just point to intimate association cases and can you point to, can you point to First Amendment cases and then, or do you have to point to them being together, in order to have this robust consensus of others? Can you cobble together something from a circuit on one and something from a circuit on another? I'm just trying to figure out what your view is on what you need to do to have that robust consensus. It's complicated by the fact that the Ninth Circuit has this, you know, we don't have a case on point, we just have to have a robust consensus. Right. So, that's a really difficult question because in the cases that do exist, the couple that have talked about both of those, and there are a couple that have denied qualified immunity, that Middle District of Alabama, which the Eleventh Circuit in Gaines chose not to follow, they said, well, the only way that you connect the plaintiff to the person whose constitutionally protected activity was at issue, is through their intimate association. So you've got First Amendment free speech issues by the actual speaker, and you tie them back to the plaintiff through this right of intimate association. There's no case from this circuit that has walked through that analysis, and there are cases from around the country that have talked about it, but then applied qualified immunity. Can I ask a question? Just, I'm looking at, do you disagree that there is a First Amendment right of intimate association? Or do you think that's, that's at all in doubt? I don't think it's in doubt where the allegation there's been a direct and substantial impairment of the relationship. No, but I'm. So, it doesn't, I'm sorry to interrupt. I'm a level above that. Okay. Just, does this right exist? Under the First Amendment, whatever may also exist. In certain circumstances, yes. Under the 14th Amendment. In certain circumstances, yes. Because Duarte says so flat out. I don't know why he keeps saying there's confusion about it. We have emphasized that the First Amendment protects those relationships, that is, relationships among family members, including family relationships that presuppose deep attachments, et cetera, et cetera. So it just says it flat out, and whatever else we may have said that confuses it is really kind of irrelevant. Well, I'm only quibbling with, Your Honor, because we're not aware of any court that has applied it in a situation like this when there's no allegation, or when they took the allegation of the association. No, and I understand that point. But where they said, hey, as a result of this conduct, my association with my husband was impinged upon. That's not in this case. In the cases that have found that, yes, there is a right under the First Amendment to intimate association, those cases have involved allegations of removing a child from a home, separating family members, where there is a. I mean, this is why it's so disturbing to be deciding this case without any actual facts. But one assumes that if Mr. DeFrancesco lost his job, that he lost his income for some period, and that that was, and if that was connected to his intimate association, that would be an injury to, that traced to his right of intimate association, in fact, affected his husband. But we don't know any of that, because it's not in the complaint, and it's, and we have no facts. Well, what we do know is DeFrancesco saying, I am not seeking to vindicate the rights of my husband in this lawsuit. I understand that. I'm seeking to vindicate my own rights. And if he lost earnings because he was fired, that's a claim that's personal to him. If Goldman wants to come in and say, hey, our marital community was depleted because my husband lost his job because, because, because, that's not this case. It hasn't been alleged, and no authority has been provided to say that that would be enough to create a right that Dr. Dake would have known in the spring of 2019, told him that he was violating a constitutional right held not by Goldman, by DeFrancesco, by terminating DeFrancesco. I mean, one of the problems I have with this case is that I find it extremely unlikely that if you ask Dr. Dake, and whenever it was, or if he asked his lawyer, is it okay if I fire this person because of what his husband said, anybody would have said yes. Nobody would have said yes. But the next question would have been, what right am I violating? Am I violating Goldman's right? No. Maybe you're violating his right of intimate association, or maybe you're violating his first-name retaliation, but whatever it is, you can't do it. But the maybe is what creates qualified immunity. No, it isn't. Because the maybe is only as to theory. The maybe is not as to outcome. Right.  But if the right can't be defined, and we still haven't heard, they haven't said, Your Honors, we are sewing together two clearly established First Amendment rights, speech and association. That's not this case, okay? If they had said that and said, that's what we're doing here, those rights may exist. The intimate association right does exist, but it's not clearly established in this situation. And certainly the cobbling together of two rights to create a third and say that it's clearly established, there's no law to support that. No robust consensus. It's not an obvious clarity case. And there's certainly no controlling authority in this circuit or from the United States Supreme Court. And that's the problem that we have here. Can I get you to respond to, I mean, you cut through everything. It seems like what's going on here is, you know, because one of the things that has been emphasized is, yeah, but there's no circuit that's found that this right doesn't exist, which I agree with you. That cannot be the standard for qualified immunity, right? But what's driving that thinking is, it just feels like you should not be able to fire somebody for the speech of somebody else, a family member. And so, and that's, I think, what's driving the courts. But as you heard me say earlier, I think it's also clear that courts are grasping to try to figure out where this thing fits. And I don't know how that fits into the qualified immunity. Because I think as I, you know, I definitely don't want to put words into my colleague's mouth, but it seems like there's an emphasis that, come on, this right has to exist, right? It's almost like this right has to exist. You're not going to tell me today that this right doesn't exist. But if, what do we do with the fact that it sure seems like a strong feeling that this right must exist, but it's not super clear where it comes from, there's not a consensus on where it comes from, what do we do with that for purposes of qualified immunity? Well, respectfully, you apply qualified immunity here, and if this Court wants to define those rights, it certainly can. I mean, I think that the jurisprudence is calling out for someone to really say what the First Amendment right of intimate association is. But it's a little hard for us to do that because of the, in this case, because of the fact that, you know, the disclaimer of the intimate associate, et cetera, that seems a little bit harder. No, you're right. You're right. I guess you could address the First Amendment free speech right being held by the nonspeaker based on the allegedly protected activity of the spouse. And just as a footnote. But you're saying, generally speaking, we could lock it down here, but your feeling is that that, if all there is is a really strong feeling that this right must exist, but it's not, it's not, there's not a robust consistent, consensus as to where it comes from or what is the source of this, then you don't think that qualified immunity exists, I guess? I assume that's your position? Well, I think that it . . . I mean, it does exist. Yes. It does exist. Yes. That would, that would result in this panel affirming Judge Jorgensen. It just, there's a lot of strings out there. They haven't been sewn together into what anybody could say was clearly established or would have told the actor in the spring of 2019 that there's a clearly established constitutional right. Not sure what it is, where it sits, or what its scope is. But this just feels wrong. You can't do it. That would paralyze the operation of government offices who are qualified immunities to protect them from making reasonable but mistaken decisions. I assume that the defense in this case is going to be that that's not what happened. They fired him for some completely different reason, right? I presume that's . . . Well, the . . . I mean . . . Yes. One of the things that's frustrating here is we're sitting here and deciding a non-case. Well, that shouldn't get in your way. Because, in fact, as I said before, if somebody, if they had gone and said, you know, I don't like what your husband said, I'm firing you for that reason, he never would have done that. No one ever would have thought that was okay. And understand, maybe they don't know why, but they wouldn't have done it. And your defense is surely going to be that that's not what happened or that Goldman's speech wasn't protected. So we're sitting here with really a non-case. Well . . . Is that true in your view? Not for purposes of prong to a qualified immunity. I understand that. We've assumed every fact in their favor. We've assumed. It can't get any better for them in the prong to analysis than it is today. I think what Judge Berzon is asking is, if you were in summary judgment right now, what . . .  Doesn't it matter? Don't you think your client's defense to this is likely not going to be, we believe that we had a right to fire somebody for the First Amendment-protected activities of somebody else? It's going to be, we fired him because of some other employment-related reason that you may well have. Or a Goldman's speech wasn't protected in the first place. No, correct. I mean, and that was the focus of the first motion to dismiss. And it was dismissed on that grounds, that it wasn't . . . And the second one, too, frankly. Well, the second one, the Court found for purposes of this ruling, I will assume that the speech is protected. That is going to be a fertile battleground if, hopefully not, this case goes back and we get to the facts. But for purposes of the qualified immunity analysis, it doesn't get any better for them for analyzing prong to than taking all of their allegations as true. And we don't need any more facts because it's a pure question of law. And this right, respectfully, it just didn't . . . it wasn't clearly established. When Dr. Dake did what he was alleged to have done in the spring of 2019. With that, Your Honors, I've gone over my time. We'd ask you to affirm. Thank you very much. Thank you, Mr. Dowd. Ms. Brody. Thank you, Your Honors. I just have three points to make in response. So the first, opponents put a lot of weight on the Gaines case. An obvious reason to ignore the holding of that case that it's not clearly established is because the law of the Eleventh Circuit applied in Gaines is that only an on-floor Supreme Court case or Eleventh Circuit case is capable of clearly establishing the law. That is why it didn't pay any attention to the other circuit cases or the district court case within the Eleventh Circuit. That is the only reason that supports the decision that it is not clearly established. It's the only reason that it gave. There's been a lot of discussion about whether or not we removed or waived this association claim. And this was a response to appellant's argument during the last panel where it said we had waived the free speech claim entirely. And we were not basing our claim on speech whatsoever. It was exclusively about intimate association. And that because there are two sources of the right of intimate association, the First Amendment and the Fourteenth Amendment, we therefore are or they were entitled to qualified immunity because it wasn't clear where that right emanated. But it is clear because Warte says so. Yes. We agree that it is the First Amendment. The First Amendment is the only right of association to the extent it exists or not. And whether or not the free speech clause includes within its ambit close people in a close relationship with them, that it would deter, like the classic First Amendment cases will deter the exercise of free speech for the retaliation to happen. And it would chill the exercise of free speech to be able to freely retaliate against somebody in a close personal relationship. If you knew that your husband would be fired as a public employee if you engage in free speech, you wouldn't engage in the speech. There's a likelihood that that would be chilled. And so whether or not that's just the free speech clause or whether or not courts have reached that conclusion because they also appreciate that the First Amendment includes protection for marital relationships like husbands and other close spouses, family members, when we look to the Title VII case, the Supreme Court said we will extend this to anyone in a close family relationship. That's enough for us. And when we have the other cases, like there's, I think, McTutick out of the Second Circuit, the debate in that case wasn't whether the First Amendment protected it. It's like, well, our fiancé is close enough that that relationship would have been.  But the question is whether you have essentially waived that part of the theory out of the case. And the question — And we haven't. When you look at our allegations in the complaint, what we added in the Second Amendment complaint were more allegations regarding the protected nature of the speech. That was an issue before. Did you take out a section that had to do with First Amendment intimate association? We didn't. The same allegations are in there as the last — I thought they're not in there anymore. That is the position that appellees — There was a heading or something that's not there anymore. That is the position that appellees have taken. It's possible that we remove one reference. I mean, they've made a big issue about the number of references to the First Amendment in our complaint. When you look at the allegations of our complaint, the styling of the claim has not changed, and the allegation that we were fired because our husband engaged in protected speech has always been the allegation in the theory of this case. That has never changed. And what has been at issue is what the source of that right is and whether the source of that right is clearly established. And so when we get to whether the right is association, free speech, or some combination of the both, under Ninth Circuit law, not Eleventh Circuit law, the combination of two existing precedents is more than enough to clearly establish a right. And so we have — So you're saying two circuit precedents is a robust consensus? I am saying that — no, I am saying that for purposes of clearly establishing it, you can look at two different bodies of law and combine those bodies of law in order to find a right clearly established. If the law on those bodies is either binding precedent or persuasive. Have we ever done that, or are you just saying we think we could do that? I think the cases that we've discussed today do establish that, that there is a — we have the clearly established law that you can't retaliate for protected speech. And we also have clearly established law that you can't retaliate for purposes of — if it would — you can't retaliate against someone for purposes of interfering with their marital relationship. And so that means — Just to be clear, what I'm asking is — so I understand your point, that you can take, like, two clearly established areas where there — and then you're saying why can't you put those two together and — to create a clearly established hybrid sort of situation?  And I'm asking specifically, are you — is there any time when our Court has done that and said, yes, there's a robust consensus, we put two separate clearly established areas out of circuit, not Supreme Court, but we put them together to create a robust consensus? So those are binding Supreme Court cases. The clearly established law just hasn't — there's no binding Supreme Court or Ninth Circuit law. But if you look at the — there is plenty of binding Supreme Court case law that says you can't retaliate for protected speech, you can't interfere with marriage relationships. The cases that exist that we posit are a robust consensus are the ones that have already done that merging of the law, which in the Ninth Circuit, there's no reason why you can't do that. And then — Can I ask you about the association point before we conclude?  This is following on Judge Berzon's question. Looking back at the district court decision, it does say that the Court notes that the SAC does not contain allegations of a First Amendment violation based on the right of association. So is your position that that's just a mischaracterization of the complaint? That's right. And what the district court appeared to have done is determined that that law wasn't clearly established under the right of association and then just said, well, the Ninth Circuit didn't reverse that, therefore, my prior decision holds. Well, the problem is — and I don't know what we do with this because I — but just the problem is that the original complaint in paragraph 65 said plaintiff is under First Amendment retaliation. It said plaintiff has a First Amendment right of association with his spouse. His right of association protects him from retaliation based on the protected conduct of his spouse. And then you go on, defendants acted under Colorado State law. So it's 65 and 66. And then you go to the Second Amendment complaint. And in the Second Amendment complaint, you have — the numbers are different now, but you have 68, and then where 65 would have been, there's nothing there. And then — well, no, I think yours is different. You have 69, and then where the next paragraph would have been, it's not there. And then you have the same paragraph again. So I don't know what you do with that. I mean, you're saying, well, it's just part of the theory, and it's all part of the retaliation theory, so it didn't have to be in there separately. That's essentially what I understand you'd be saying. We're saying that we were responding to a argument that had gotten three years into this case that we were asserting a right under the 14th Amendment. I'm sorry. I didn't hear that. We had spent three years of a case arguing that we had not asserted a right in our complaint under the 14th Amendment. But that wasn't — but it wasn't under the 14th Amendment as asserted in the first complaint. And yet it wasn't — and yet we had the fight for three years. So the claim was construed as somehow asserting a right that we had never claimed that was completely divorced from the free speech at issue, and it wasn't. We — the — But you're saying that it didn't have to be there. It was simply — it's part of the First Amendment retaliation claim. It didn't have to be alleged separately, given the circumstances, which is that they did have a First Amendment right of interment. Yes. The — what is alleged is the factual — we have alleged facts about the association throughout, the fact that they're married, all of that. The — declaring that to be an exercise of the right of association is a legal conclusion that we don't need, particularly in light of all of the issues that it caused before about whether we were asserting a right under the 14th Amendment. And that is the right that we have repeatedly said we are not bringing. The right that we see is tied to the exercise of a constitutionally protected right, free speech, and that the only reason our client was — was terminated and experienced the harassment that predated the termination was because of his relationship with the person who engaged in speech, and that we think that the fact that they were husbands and that the only source of the — or the only cause of the retaliation was the husband's speech is enough to bring the harm suffered by my client, Anthony DeFrancesco, within the scope of the First Amendment. So just — and I know we're running over time, but just to follow up on this thread. So if the — if instead of firing DeFrancesco for Goldman's speech, the university had said, you know, DeFrancesco — Goldman used to work here. He was a difficult person, and he's married to another person who works here. We're going to fire DeFrancesco because Goldman was just a difficult person to work with. Are they permitted to do that under the Constitution, or is that a different type of claim? I think that's a different type of claim, and I'm not sure whether that claim is clearly established, whether or not as a matter of due process that you can — or some other basis, whether it's proper to just fire somebody for the purpose of their intimate relationship. There are other cases that have discussed that in terms of — but I don't think that's this case. Okay. So you see a distinction between this case and that one? I do, and I think when we — you know, we see ourselves in the big world, the Ninth with any right that the actual speaker could have had. So he didn't suffer any retaliation — he didn't suffer any retaliation, he didn't suffer any damages because he voluntarily quit the university. And so the — but the question is, if his speech isn't protected, we don't dispute that we don't have a claim. You know, we are tying — we are tying our constitutional right to there being a finding that the speech at issue was, in fact, protected by the Constitution. And if it wasn't, and they fired us for another reason, or that that is an improper basis because that speech isn't protected, then we're out of luck. And so that's why we see the speech as at issue, and we haven't pled those allegations. We're not relying on allegations that the loss of marital income, like, harmed our intimate association or things like that. What we're talking about here is you shouldn't — government shouldn't be able to fire somebody because someone in a close relationship engaged in protected speech. Okay. In a close — but the reason a close relationship matters is because it's self-protected by the Constitution. If it weren't, would that matter? I mean, yes. I do think that would at least be a consideration. I suppose it was your best friend. Yes. I mean, I think that those are the — those are the types of questions that the Supreme Court has — or not the Supreme Court, but that other courts have asked. Like, is this relationship enough? And, you know, I was also not familiar with the Supreme Court case that you mentioned, but the Watson case, the issue was that there wasn't a relationship. And there — we have some other cases that were discussed in the opponent's brief where it's like a business relationship between parties is not necessarily enough. So a friend — I don't know whether that's enough. I don't — I haven't done that research. I can't tell you. But we do know, and the law is very clear under both Supreme Court and Ninth Circuit precedent, that marital relationships are protected. Okay. Thank you, Your Honor. We ask that you reverse. Thank you very much. We thank both counsel. This matter is submitted. That concludes our calendar for this morning. We'll stand in recess until tomorrow morning. All rise.
judges: BERZON, BRESS, VANDYKE